## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| FERGUSON JOHNSON | * | CIVIL ACTION NO. 08-0054 |
| VERSUS | * | JUDGE JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED** for further proceedings consistent herewith.

### Background & Procedural History

On March 3, 1997, Ferguson Johnson filed the instant claim for Title II Disability Insurance Benefits. (Tr. 52-54). He alleged disability since May 5, 1995, due to "phasia," attention deficit disorder, dyslexia, a slipped disc, and torn muscles. (Tr. 52, 86). The claim was denied initially and upon reconsideration. (Tr. 35-41, 43-46). Thereafter, Johnson requested and received a July 8, 1998, hearing before an Administrative Law Judge ("ALJ"). (Tr. 301-323). In an August 24, 1998, written decision, the ALJ determined that Johnson was not disabled under the Social Security Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to other work that exists in substantial numbers in the national economy.

(Tr. 187-197). Johnson appealed the adverse decision to the Appeals Council. On November 7, 2001, the Appeals Council granted the request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 205-207).

Upon remand, a new hearing was held on May 21, 2002, before the same ALJ. (Tr. 324-342). In a June 10, 2002, written decision, the ALJ issued a partially favorable decision. (Tr. 17-24). The ALJ determined that Johnson was disabled as of December 6, 1999, through at least the date of the decision. *Id*. However, he determined that for the preceding period through December 5, 1999, Johnson was not disabled under the Act, finding at Step Four of the sequential evaluation process that he was capable of returning to past relevant work as a meter reader. (Tr. 17-24). Johnson appealed the adverse portion of the decision to the Appeals Council. Yet, on August 15, 2005, the Appeals Council denied Johnson's request for review. (Tr. 5-7).

On November 17, 2005, Johnson sought review before this court. *Johnson v. Commissioner, Social Security Administration*, Civil Action Number 05-1982 (W.D. La.). Following delays for briefing, the undersigned found that for the period from May 5, 1995, through December 5, 1999, the ALJ's residual functional capacity assessment and Step Four determination were not supported by substantial evidence. (Tr. 375-383). Accordingly, the undersigned recommended that the Commissioner's decision for the period from May 5, 1995, through December 5, 1999 be reversed and remanded, and that the decision for the period beginning on December 6, 1999, be affirmed. *Id*. On February 3, 2007, the district court entered judgment in accordance with the report and recommendation. (Tr. 374).

Upon remand from the district court, the Appeals Council vacated the prior administrative decision and remanded the matter to an ALJ for further proceedings. (Tr. 384-

2

386). A new hearing was held on May 22, 2007, before ALJ Thomas Bundy. (Tr. 399-413). Thereafter, in a November 30, 2007, written decision, the ALJ determined that Johnson had not been disabled during the relevant period, finding at Step Four of the sequential evaluation process that he was able to return to his past relevant work as a meter reader. (Tr. 358-371). The ALJ's decision became the final decision of the Commissioner. *See*, 20 C.F.R. § 404.984.

On January 14, 2008, Ferguson Johnson sought review before this court. He contends that "[t]he ALJ erred in assessing [plaintiff's] residual functional capacity, resulting in an improper finding that [plaintiff] could return to his past relevant work as a meter reader." (Pl. Brief, pg. 3).

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340,

343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in

4

> [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See, Boyd v. Apfel, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps Two and Three

The ALJ determined at Step Two of the sequential evaluation process that during the relevant period, May 5, 1995, through December 5, 1999, Johnson suffered from severe impairments of chronic obstructive pulmonary disease ("COPD"); degenerative joint disease of the cervical and lumbar spine; depressive disorder; reading disorder; and disorder of written expression. (Tr. 364). He concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 364-366).

5

In his brief, plaintiff asserted that the findings of a consultative physician, Dr. Rumalla, "closely resemble" the requirements to meet Listing 1.04A. (Pl. Brief, pg. 6). To the extent that plaintiff suggests that the ALJ erred in his Step Three determination, the court observes that to establish that a claimant's injuries meet or medically equal a Listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See, Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 620. Plaintiff has not made the requisite showing here; thus, the ALJ's Step Three finding is supported by substantial evidence.

## II. Mental Residual Functional Capacity

The ALJ determined that during the relevant period, Johnson retained the residual functional capacity to perform

> medium work, reduced by moderate limitations in the following: his ability to understand, remember and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to set realistic goals or make plans independently of others; where 'moderate' means there is more than a slight limitation in an area, by [sic] the individual is still able to perform satisfactorily."

(Tr. 366).[1]

---

[1] Medium work is defined and explained by Social Security Ruling 83-10:
    [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour

6

The ALJ's mental residual functional capacity assessment is derived almost verbatim from a Mental Residual Functional Capacity Assessment form completed on August 29, 1997, by non-examining agency physician, Richard J. Alexander, M.D.,[2] which in turn, is based upon a March 27, 1997, psychological evaluation conducted by T. F. Van Buskirk, M.S. and Gregory D. Dayton, Ph.D. (Tr. 116-121, 137-139). Plaintiff's principal challenge to the ALJ's mental assessment is that there is no indication that the agency physician(s) defined "moderate" the same as the ALJ did, i.e. as "more than a slight limitation in an area, by [sic] the individual is still able to perform satisfactorily." If the agency physician's definition of the term "moderate" was more restrictive than the ALJ's definition, then arguably the ALJ's residual functional capacity assessment and Step Four determination are not supported by substantial evidence.

---

workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

[2] Alexander's assessment was affirmed by Jim L. Cox, Ph.D. *Id.*

The controversy arises because the regulations and Program Operations Manual System ("POMS") do not directly define "moderate." *Cantrell v. McMahon*, 227 Fed. Appx. 321, 2007 WL 557567, *2 (5th Cir. Feb. 15, 2007) (unpubl.). The ALJ adopted the definition of "moderate" that is set forth in the Medical Source Statement of Ability to do Work-Related Activities (Mental), Form HA-1152-U3 (06-2006). In contrast, the agency physicians completed Form SSA-4734-BK-SUP (8-85) formerly SSA-4734-F4 SUP ("Mental Residual Functional Capacity") which does not contain a definition of "moderate." (Tr. 137-139). The instructions for completing Form SSA-4734-F4 SUP state that "moderately limited" means that the "individual's capacity to perform the activity is impaired." ("Completion of Section I of SSA-4734-F4-SUP;" POMS DI 24510.063). The instructions further provide that the agency physician shall describe the degree and extent of the limitation in Section III of the form. *Id*.

In this case, the non-examining physicians completed section III by describing claimant's residual capacity in positive terms, rather than describing the extent of his limitations. (Tr. 139). Although numerous courts have rejected variations on the argument advanced here, it appears that most have addressed the issue from the perspective of the hypothetical posed by the ALJ to the vocational expert at Steps Four or Five, rather than the sufficiency of the ALJ's residual functional capacity assessment. *See e.g., Cantrell v. McMahon*, 227 Fed. Appx. 321, 2007 WL 557567 (5th Cir. 2007) (unpubl.); *Beene v. McMahon*, 226 Fed. Appx. 348, 2007 WL 836926 (5th Cir. 2007) (unpubl.); *Zills v. Barnhart*, 220 Fed. Appx. 289, 2007 WL 627605 (5th Cir. Feb. 27, 2007); *Phillips v. U.S. Commissioner Social Security Admin.*, 2008 WL 544935 (W.D. La. Feb. 7, 2008); *Thibodeaux v. Astrue*; 2008 WL 3850444 (E.D. La. Aug. 14, 2008); and *Stubbs v. Astrue*, 2008 WL 2224877 (E.D. La. Apr. 1, 2008). Nevertheless, because this matter is being reversed on other grounds, plaintiff may pursue this issue upon remand by exercising his right to

subpoena or propound written interrogatories to the physician(s) in question. *See, Lidy v. Sullivan*, 911 F.2d 1075 (5th Cir. 1990); POMS DI 29501.025 (authorizing written interrogatories); *see also*, (Tr. 258-263).

### III. Physical Residual Functional Capacity

Plaintiff next contends that the ALJ's determination that plaintiff retained the exertional capacity for medium work is not supported by substantial evidence. Here, the instant ALJ grounded his physical residual functional capacity assessment upon the August 29, 1997, assessment form completed by non-examining agency physician, Moise D. Levy, M.D. and affirmed by David Tasker, M.D. (Tr. 141-148). Of course, "[A]n ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added). Here, the non-examining agency physician(s) based his opinion upon the July 29, 1997, examination findings of consultative physician, Sudhakar Rumalla, M.D. (Tr. 123-126). It is manifest, however, that Dr. Rumalla's findings do not support a residual functional capacity for medium work.

Rumalla indicated that Johnson complained of constant, dull lower back pain, which was sharp at times, and aggravated by usual activities. (Tr. 123-126). Johnson reported that he was able to complete usual housework activities, mow the yard, drive a car, and manage self care independently. *Id*. Upon examination, however, straight leg raising was positive to about 80 degrees bilaterally. *Id*. Moreover, although Johnson was able to walk in a straight line, without a limp, he demonstrated radiating pain to the left thigh with paresthesias, a hypoactive left knee jerk, and sensory impairment left L2-4 distribution. *Id*. Rumalla diagnosed chronic lower back

syndrome, probable lumbo-sacral facet joint syndrome, left L3-4 lumbar radiculopathy, mild peripheral arterial insufficiency, and refractory error. *Id*. Rumalla opined that he was uncertain whether Johnson would be able to perform any substantial work activities at that time. *Id*.[3]

Although it is axiomatic that a physician's statement that a claimant is disabled or unable to work is accorded no special significance under the regulations,[4] Dr. Rumalla's doubts regarding Johnson's ability to perform *any* substantial work activities certainly does not encourage a finding that he could perform the lifting demands of heavy or even medium work.[5] Thus, the assessments rendered by the non-examining agency physician(s) are contrary to the findings of the examining physician, and cannot be used to support the ALJ's decision. *See, Carrier, supra*. Moreover, without the assessment by the non-examining agency physicians, the record remains otherwise devoid of requisite medical assessment or corroborating evidence to support the ALJ's residual functional capacity determination. *See, Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite

---

[3] Dr. Rumalla's statement is supported by his objective examination findings and diagnoses of radiculopathy and peripheral arterial insufficiency. X-rays from October 2007 confirm that Johnson suffered from moderate to severe changes of the cervical spine and spondylosis of the lumbar spine. (Tr. 167, 170).

[4] 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

[5] While it is possible that Johnson may have been able to manage heavy work at the time he was let go from his job in 1995, it is manifest that his condition had deteriorated by the time of his physical examination in July 1997.

exertional demands, the ALJ's determination is not supported by substantial evidence).[6]

## IV. Step Four

At Step Four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that Johnson was able to return to his past relevant work as a meter reader both as he actually performed the work and as the job is generally performed in the national economy. (Tr. 370-371).[7] Plaintiff contends that the ALJ's Step Four determination is not supported by substantial evidence. The court agrees. The VE testified that the job of meter reader is performed in the national economy at the light exertional level,[8] – thus even if Johnson retained the exertional capacity for only light work, he retained the physical ability to perform the job. The VE further implied, however, that in his experience, the job of meter reader required the ability to read addresses. (Tr. 404-405).[9] However, Johnson is unable to read addresses; he performed his prior job by relying upon serial numbers. (Tr. 405).[10] Thus, the VE's testimony does not support a finding that Johnson was able to perform the job of meter reader as the job is generally performed in the national economy.

---

[6] Plaintiff's testimony does not support the ALJ's residual functional capacity determination.

[7] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61)

[8] (Tr. 404).

[9] In response to further questioning, the VE admitted that he did not know whether a worker would have to be literate to operate the handheld computer used by meter readers. (Tr. 412).

[10] There is evidence in the medical record that Johnson likely could not even read a list. (Tr. 259).

The ALJ further recognized that Johnson's past relevant work required him to occasionally lift tree limbs. (Tr. 371). However, in his Work History Report, plaintiff stated that as a meter reader, he had to occasionally lift tree limbs and transformers which weighed up to 100 pounds. (Tr. 74). Obviously, this occasional lifting requirement is incompatible with a medium or light exertional capacity. *See*, 20 C.F.R. § 404.1568. Accordingly, with a residual functional capacity for medium or light work, plaintiff is unable to return to his past relevant work - as he performed it. The ALJ's Step Four determination is not supported by substantial evidence.

## V. Reverse and Remand or Reverse and Render

Plaintiff urges the court to reverse with instructions to award benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See, Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also, Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).

Plaintiff argues that because he cannot perform his past relevant work, a residual functional capacity for light work compels a finding of disabled under the medical-vocational guidelines at Step Five of the sequential evaluation process. 20 C.F.R. § 404.1569; Rule 202.09, Table 2, Appendix 2, Subpart P, Regulations No. 4. However, plaintiff's argument assumes that his exertional capacity did not exceed light for the entire relevant period. As discussed above,

this is a questionable proposition.[11]  Moreover, even if plaintiff were reduced to light work, Rule 202.09 contemplates a claimant with unskilled or no previous work experience.  Rule 202.09, Table 2, Appendix 2, Subpart P, Regulations No. 4.  Here, the VE testified that plaintiff's prior work was semiskilled.  (Tr. 404).  It is also not known whether the skills that he obtained from his prior work are readily transferrable to other jobs in the economy.  *See*, Rule 202.00(c), Appendix 2, Subpart P, Regulations No. 4.  Accordingly, the court is unable to determine that plaintiff is entitled to benefits.[12]

For the foregoing reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[11] In fact, plaintiff drew unemployment benefits for a time after his discharge, thus indicating that he was ready and able to work during that period.  (Tr. 363-364).

[12] The decision to remand for further consideration is ameliorated to a certain extent by the court's understanding that plaintiff is currently receiving disability benefits.  *Contrast, McQueen v. Apfel*, 168 F.3d 152, 156 (5th Cir. 1999) (reversed with instructions to award benefits where claimant was without disability benefits for years).

**REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 4th day of February, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE